E.J. McKERNAN COMPANY, Plaintiff-Appellee, v. JOSEPH J. GREGORY, Defendant-Appellant.

Second District   Nos. 2—93—0443, 2—93—0721 cons.

Opinion filed December 13, 1994.

Gary L. Taylor, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellant.

Jay H. Tressler, of Tressler, Soderstrom, Maloney & Priess, of Chicago, and John P. Lynch, Jr., of Tressler, Soderstrom, Maloney & Priess, of Wheaton, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Joseph J. Gregory, brings a consolidated appeal from two orders of the circuit court of Du Page County denying his motion to quash the garnishment of a mutual fund and his motion to quash and restrain the sale of his home in Glen Ellyn, Illinois. We reverse the mutual fund order and remand the cause, and we reverse the order authorizing the sale of the home.

## NONWAGE GARNISHMENT

A judgment was entered on February 4, 1992, against the defendant and in favor of the plaintiff, E.J. McKernan Company, in the amount of $306,000. On June 26, 1992, the plaintiff filed an affidavit for nonwage garnishment on the Prudential Life Insurance Company

of America. On August 19, 1992, Gregory filed a motion to quash the garnishment. On March 16, 1993, the circuit court issued an order denying the defendant's motion to quash and determining that the plaintiff was entitled to half of the mutual fund account held by Prudential for the defendant and his wife.

■ On appeal, the defendant claims that the garnishment of his mutual fund account with Prudential is void because Illinois' nonwage garnishment law (735 ILCS 5/12—701 *et seq.* (West 1992)) violates the procedural due process guarantees of the Illinois and United States Constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.) The defendant further argues that the garnishment was improper because the monies in his mutual fund account, entirely the proceeds of life insurance contracts, were exempt from garnishment. 735 ILCS 5/12—1001(f) (West 1992).

We note initially that the nonwage garnishment law was amended by the Illinois General Assembly in 1992 to provide debtors with notice of garnishments and an opportunity to assert exemptions. (Pub. Act 87—1252, eff. January 7, 1993 (amending 735 ILCS 5/12—701, 12—705, 12—707, 12—710, 12—711, 12—716 (West 1992)).) These amendments appear to address the constitutional infirmities suggested by the defendant. However, we are presented only with the question of whether the law in effect prior to January 7, 1993, the effective date of the amendments, passes constitutional muster. We agree with the defendant that it does not. Therefore, we reverse the garnishment order and remand for further proceedings consistent with this opinion.

The nonwage garnishment law in effect in 1992 provided in relevant part:

"Upon the filing by a judgment creditor or other person of an affidavit that the affiant believes any person is indebted to the judgment debtor, other than for wages, or has in his or her possession, custody or control any other property belonging to the judgment debtor ***, the clerk of the court in which the judgment was entered *shall issue summons against the person named in the affidavit commanding him or her to appear* in the court as garnishee ***." (Emphasis added.) 735 ILCS 5/12—701 (West 1992).

The defendant claims that he had a valid exemption to claim which would have precluded the attachment of his mutual fund and that the garnishment notice issued pursuant to section 12—701 against his mutual fund effectively froze those assets without first providing him an opportunity to assert his exemption. We believe it is clear from a plain reading of the 1992 version of the nonwage

garnishment law that the defendant's claim of constitutional infirmity is correct.

We note that the 1992 version of the nonwage garnishment law was declared unconstitutional in a Federal district court case, *Jacobson v. Johnson* (C.D. Ill. 1991), 798 F. Supp. 500. Although not binding here, we agree with that decision that the nonwage garnishment law in effect in 1992 violated the dictates of *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893. In *Mathews,* the United States Supreme Court determined:

> "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

When we undertake this balance, we believe it is clear that there is a minimal burden on government or creditors in requiring that a debtor be given notice and an opportunity to be heard prior to issuing a garnishment summons. However, there is a great danger that a debtor may erroneously be deprived of his or her property. Therefore, the 1992 version of the nonwage garnishment law violated the defendant's due process rights.

■ The defendant further claims that the circuit court erred in determining that the plaintiff was entitled to half of his Prudential mutual fund because that account was "funded entirely by accumulated cash values in two life insurance policies" and, as such, was exempt from attachment under section 12—1001(f) of the Code of Civil Procedure (Code). 735 ILCS 5/12—1001(f) (West 1992).

The plaintiff argues that the defendant has waived this argument for purposes of appeal because the defendant failed to support his claim by citation to relevant authority as required by Supreme Court Rule 341(e)(7). (134 Ill. 2d R. 341(e)(7); see *In re Marriage of Sutherland* (1993), 251 Ill. App. 3d 411, 413.) The defendant points out that he supported his claim of exemption by citing to section 12—1001(f) of the Code. We agree with the defendant that an Illinois statute *is* "authority" under Supreme Court Rule 341(e)(7).

■ The plaintiff also argues that the defendant forfeited the life insurance exemption provided for in section 12—1001(f) when funds from the defendant's life insurance contracts were transferred into

the mutual fund. Although the record indicates that the mutual fund was comprised of accumulated cash values from life insurance contracts, it is not clear whether those values lost the attributes of life insurance proceeds once they were transferred to the mutual fund.

Section 12—1001(f) exempts:

> "(f) All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent, or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not and whether the insured or the insured's estate is a contingent beneficiary or not." 735 ILCS 5/12—1001(f) (West 1992).

In *Auto Owners Insurance v. Berkshire* (1992), 225 Ill. App. 3d 695, this court noted:

> "A debtor may trace the exemption from the exempt asset to the liquid form, but the concept of tracing is not limitless. So long as the debtor continues to hold and to use the funds for the support of the debtor and his family, the exemption statutes require the exemption of funds traceable from exempt payments. Conversely, if the debtor transforms the support payments into an investment, the purpose of the statutes is not being met; the funds are not being used for support and thus should lose their exempt character." *Auto Owners*, 225 Ill. App. 3d at 698-99.

The record before us is insufficient for us to determine whether, under *Auto Owners*, the defendant is factually entitled to the section 12—1001(f) exemption. Therefore, this must be remanded for further proceedings.

## FORCED SALE OF DEFENDANT'S HOME

On August 10, 1992, a certificate of levy was served on the defendant, notifying him that the sheriff intended to sell his personal residence in Glen Ellyn to satisfy the plaintiff's judgment.

On August 19, 1992, the defendant filed a motion to quash the levy and restrain the sale of his residence. On May 13, 1993, the circuit court denied the motion.

On appeal, the defendant claims that the circuit court erred in refusing to quash the sale of his home because it is exempt from attachment in that he holds title to it with his wife in tenancy by the entirety. (735 ILCS 5/12—112 (West 1992).) The plaintiff argues that the defendant's transfer of title to his home from joint tenancy to tenancy by the entirety was a fraudulent transfer.

■ Joint tenancy is a creature of the common law and dates back

to the thirteenth century. (*Minonk State Bank v. Grassman* (1982), 103 Ill. App. 3d 1106, 1108.) Tenancy by the entirety "is essentially a joint tenancy, modified by the common law theory that husband and wife are one person." (*United States v. Jacobs* (1939), 306 U.S. 363, 370, 83 L. Ed. 763, 768, 59 S. Ct. 551, 555; see generally Annot., 75 A.L.R.2d 1172 (1961).) Tenancy by the entirety has two important distinguishing features: it is available only to married couples, and property held by the entirety may not be attached by the creditor of only one spouse. 765 ILCS 1005/1c (West 1992); 735 ILCS 5/12—112 (West 1992).

Illinois stopped recognizing common-law tenancy by the entirety in 1861 when married women's laws were first adopted. (*Douds v. Fresen* (1946), 392 Ill. 477, 479.) These laws recognized that women enjoyed rights independent of their husbands. (See generally 750 ILCS 65/0.01 *et seq.* (West 1992).) In 1989, the Illinois General Assembly enacted a statute creating a tenancy by the entirety applicable only to "homestead property" held by husbands and wives "during coverture." Pub. Act 86—966, eff. October 1, 1990 (amending Ill. Rev. Stat. 1989, ch. 110, par. 12—112 (now codified, as amended, at 735 ILCS 5/12—112 (West 1992)) and adding Ill. Rev. Stat. 1989, ch. 76, par. 1c (now codified, as amended, at 765 ILCS 1005/1c (West 1992))).

It is uncontroverted that the defendant conveyed title to his Glen Ellyn home from joint tenancy with his wife to tenancy by the entirety with his wife after the plaintiff's judgment was entered. The judgment was entered well after October 1, 1990, the effective date of the statutorily created tenancy by the entirety law. Also, the plaintiff's judgment was entered against the defendant individually, and not against the defendant and his wife jointly. The plaintiff claims that when the defendant reconveyed title to his home from joint tenancy with his wife to tenancy by the entirety with his wife, he committed a fraudulent transfer within the meaning of the Uniform Fraudulent Transfer Act (Transfer Act). (740 ILCS 160/1 *et seq.* (West 1992).) The question before us is whether the Transfer Act prohibits what the statutory tenancy by the entirety appears to sanction. We conclude that the defendant's reconveyance of his home was not prohibited by the Transfer Act.

When construing a statute, a court of review is charged with determining and giving effect to the true intent and meaning of the legislature. (*People v. Sheehan* (1994), 261 Ill. App. 3d 325, 328.) The first place a court of review will look to ascertain the intent of the legislature is the language employed by the statute; and that language will be given its plain and ordinary or popularly understood

meaning. (*Sheehan*, 261 Ill. App. 3d at 328.) When the language of a statute is clear, it will be given effect without resort to other aids for construction. *People ex rel. Baker v. Cowlin* (1992), 154 Ill. 2d 193, 197.

■ Section 5(a)(1) of the Transfer Act provides:

"§ 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1) (West 1992).

The plaintiff claims that the defendant had the "actual intent to hinder, delay, or defraud" it by reconveying title to his Glen Ellyn home. However, the statutes defining tenancy by the entirety appear to authorize the defendant's action.

Section 1c of the Code provides, in relevant part:

"§ 1c. Whenever a devise, conveyance, assignment, or other transfer of homestead property maintained or intended for maintenance as a homestead by both husband and wife together during coverture shall be made and the instrument of devise, conveyance, assignment, or transfer expressly declares that the devise or conveyance is made to persons, named and expressly identified in that instrument as husband and wife, not as joint tenants or tenants in common but as tenants by the entirety, the estate created shall be deemed to be in tenancy by the entirety." 765 ILCS 1005/1c (West 1992).

Section 12—112 of the Code provides:

"Any real property held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants." 735 ILCS 5/12—112 (West 1992).

■ The tenancy by the entirety statutes do not refer to the Transfer Act, nor do they contain any limitations upon reconveying by a judgment debtor. Thus, we must reconcile the Transfer Act and the statutory tenancy by the entirety provisions. Our supreme court, in *Lily Lake Road Defenders v. County of McHenry* (1993), 156 Ill. 2d 1, recently reviewed the law applicable to reconciling apparently conflicting statutes and the rule of "repeal by implication," in which a later-enacted statute repeals a conflicting earlier statute.

"As a general rule, repeals by implication are not favored. [Citation.] Courts presume that the legislature envisions a consistent body of law when it enacts new legislation. Where there is an alleged conflict between two legislative enactments, this court has

a duty to construe those statutes in a manner which avoids an inconsistency and gives effect to both enactments, where such a construction is reasonably possible. [Citations.]

An implied repeal results only when the terms and necessary operation of a later statute are repugnant to and cannot be harmonized with the terms and effect of an earlier statute. [Citation.] In such circumstances, the subsequently enacted statute will repeal the former by implication, since it cannot be presumed that the legislature intended to enact laws which are contradictory." *Lily Lake*, 156 Ill. 2d at 9.

■ We conclude that the Transfer Act and the tenancy by the entirety statutes contain no conflicts. The Transfer Act forbids transfers made with the "actual intent" to hinder, delay, or defraud. However, intent is irrelevant in a tenancy by the entirety conveyance because it simply cannot be fraudulent to engage in conduct that is specifically and unambiguously sanctioned by statute. A plain reading of the tenancy by the entirety statutes makes it clear that no mental state is required to use the tenancy's protection. There are no limitations or qualifications on the use of the tenancy, other than that the real property be held by a married couple during coverture and that the property be the couple's "homestead." Additionally, the statute provides that only those judgments entered against a debtor on or after October 1, 1990, are subject to the exemption. The defendant has met all of the statutory requirements.

It cannot be gainfully argued that the General Assembly was unaware that some married persons might seek shelter from their individual creditors by use of the tenancy by the entirety. There was much organized opposition to reinstatement of the tenancy by the entirety, and the tenancy's positive and negative effects were well known. Yet the General Assembly saw fit to approve the tenancy. (See generally Hammond & Otto, *The Illusion of Reform: Illinois Statutory Tenancy by the Entirety*, 78 Ill. B.J. 198 (1990).) Indeed, there is no practical reason to hold property in tenancy by the entirety other than to shield it from the creditors of one spouse.

Moreover, section 1c specifically provides that a "tenancy by the entirety may be created notwithstanding the fact that a grantor is or the grantors are also named as a grantee or the grantees in a deed." (765 ILCS 1005/1c (West 1992).) This language specifically sanctions exactly the type of transfer that the defendant undertook.

The plaintiff cites to *Cochran v. Cutler* (1976), 39 Ill. App. 3d 602, which contains the following rule of law: "Once a judgment lien has been properly created and attached to the judgment debtor's interest in real property, the debtor may not impair or defeat the lien by conveying the property to the third party ***." (*Cochran*, 39 Ill. App.

3d at 606.) On the same page, *Cochran* also notes: "However, the lien of judgment does not attach to the judgment debtor's homestead." (*Cochran*, 39 Ill. App. 3d at 606.) We recognize that *Cochran* involved not a tenancy by the entirety question but the statutory homestead exemption of $7,500 that all individuals may claim under section 12—901 of the Code. (735 ILCS 5/12—901 (West 1992).) However, the policy concerns behind both the section 12—901 exemption and the tenancy by the entirety are the same. They protect persons from losing their primary residences.

The plaintiff further urges that we adopt the position of an Ohio case, *Wagner v. Galipo* (1990), 50 Ohio St. 3d 194, 553 N.E.2d 610, which declared a conveyance of title to tenancy by the entirety "could" be a fraudulent transfer under the proper circumstances. However, Ohio law permits all marital property, not just a homestead, to be held in tenancy by the entirety. This prompted the Ohio Supreme Court to note:

> "If we were to adopt appellants' position and hold that creation of an estate by the entireties (or creation of a survivorship tenancy under the current law) could never be a fraudulent conveyance, this would permit a married debtor to avoid both the obligation to his creditors and the operation of [the State's fraudulent transfer act] by placing all his property into tenancy by the entireties ***." *Wagner*, 50 Ohio St. 3d at 196, 553 N.E.2d at 613.

A married debtor in Illinois cannot place all of his or her property beyond the reach of individual creditors because Illinois permits only the marital homestead to be held in tenancy by the entirety. Thus, the policy concerns faced by the Ohio courts are not present in Illinois. If we were to adopt the plaintiff's rationale, we believe we would be adding a condition not contained in the statute which would eviscerate the law. As we have noted, the only practical reason to hold a homestead in tenancy by the entirety is to shelter that property from the creditors of one spouse.

Because we determine that the circuit court erred in refusing to quash and restrain the sale of the defendant's home, we need not consider his other contentions of error as to that order. The order granting the levy and sale of the defendant's Glen Ellyn home is reversed.

The orders of the circuit court of Du Page County are reversed, and the cause is remanded in accordance with the views expressed in this opinion.

Reversed and remanded.

INGLIS, P.J., and COLWELL, J., concur.