In re Raymond M. GILLISSIE, Debtor.

Joseph T. VOILAND, Trustee, Plaintiff,

v.

Raymond M. GILLISSIE and Joanne C. Gillissie, Defendants.

Bankruptcy No. 96 B 28299.
Adversary No. 97 A 00142.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 15, 1997.

Joseph R. Voiland, Trustee, Aurora, IL, for Plaintiff.

David S. Argentar, Robbins, Salomon & Patt, Ltd., Chicago, IL, for Defendants.

### *MEMORANDUM OPINION*

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the objection to the claim of exemption and on the amended complaint to avoid the transfer of the homestead into an Illinois tenancy by the entirety and to sell the property, filed

by Joseph T. Voiland, as trustee of the bankruptcy estate ("the Trustee") of the debtor, Raymond M. Gillissie ("the Debtor"). For the reasons set forth herein, the Court sustains the Trustee's objection to the Debtor's claim of exemption in his interest in the homestead property owned by him and his non-debtor spouse. The Court grants the Trustee's request to avoid the transfer of the property from joint tenancy to tenancy by the entirety as an actual fraudulent transfer under 11 U.S.C. § 544(b) and 740 ILCS 160/5(a). Further, the Court authorizes the Trustee to sell the property pursuant to 11 U.S.C. § 363(h).

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(B), (H) and (M).

## II. *BACKGROUND AND FACTS*

At the trial on these matters, counsel for the parties stipulated to the facts in lieu of any testimony and rested on their respective papers filed in support of their positions. All exhibits were stipulated to be admitted into evidence without objection.

From November 10, 1987 to August 29, 1994, the Debtor and his spouse were owners in joint tenancy of the property commonly known as 7N145 Fox Bend Drive, St. Charles, Illinois (the "Property"). *See* Stipulated Findings of Fact No. 4. On August 29, 1994, they conveyed the Property to themselves as tenants by the entirety. *Id.* at No. 5. The deed was recorded in the office of the Kane County, Illinois Recorder of Deeds on September 22, 1994. *Id.* They have at all relative times resided in the Property as their marital home. *Id.* at No. 6.

At the time of the transfer into the tenancy by the entirety, the Debtor was indebted to Shirley Gardner by virtue of a secured promissory note executed by the Debtor on or about December 6, 1991. *Id.* at No. 8. He was obligated in an amount in excess of $350,000.00. *Id.* at No. 9. The Debtor had

ceased making payments to Ms. Gardner at the time of the transfer due to lack of funds. *Id.* at No. 10. On August 4, 1994, prior to the transfer, demand was made upon the Debtor for payment of monies due on the promissory note and litigation was threatened if payment was not made within ten days. *Id.* at No. 11. At the time of the transfer, the Debtor did not own any property or possess any assets other than his undivided one-half interest in the Property and those assets subsequently listed on the Schedule C of his bankruptcy petition. *Id.* at No. 12. On November 18, 1994, Ms. Gardner commenced an action against the Debtor and additional parties in the Circuit Court of the Eighteenth Judicial Circuit, Kane County, Illinois, by which she sought to recover $400,000.00 under the secured promissory note and guaranty executed by the Debtor. *Id.* at Nos. 13 and 14. The Debtor's spouse was not an obligor on either the note or the guaranty. *Id.* at No. 14.

The Debtor filed a voluntary Chapter 7 petition on October 23, 1996. On the Schedule C attached thereto, the Debtor claimed the Property exempt pursuant to 750 ILCS 65/22. *Id.* at No. 15. On May 9, 1997, the Trustee filed the instant adversary proceeding to sell the Property and to avoid the transfer as fraudulent under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5. *Id.* at No. 16. The primary intent of the Debtor in transferring the Property to a tenancy by the entirety was to protect his home from creditors. *Id.* at No. 18. On June 6, 1997, the Debtor and his spouse filed their answer denying that the transfer making the change in the nature of the title by which they held the Property was made with the intent to defraud; that the change was a fraudulent transfer; and that such a change can ever be a fraudulent transfer under Illinois law. *Id.* At No. 17. After requesting additional briefing concerning the recent amendment to 735 ILCS 5/12–112, the Court took the matters under advisement.

## III. *APPLICABLE STANDARDS*

### A. *Contested Exemptions Under Illinois and Bankruptcy Law*

Under the Bankruptcy Code, either the applicable state or the federal exemp-

tions may be selected pursuant to 11 U.S.C. § 522 unless a state chooses to "opt out" of the federal exemption scheme. *See* 11 U.S.C. § 522(b)(1). The Illinois General Assembly "opted out" by enacting Ill.Rev.Stat. ch. 110, ¶ 12–1201, now recodified and cited as 735 ILCS 5/12–1201. Illinois exemption statutes are to be interpreted liberally in favor of the debtor. *In re Barker,* 768 F.2d 191, 196 (7th Cir.1985). The purpose of the exemption provision is to protect a debtor's fresh start in bankruptcy. *In re Wright,* 156 B.R. 549, 554 (Bankr.N.D.Ill.1992).

■ Federal Rule of Bankruptcy Procedure 4003 governs hearings on disputed claims of exemption and objections thereto. Section 522(*l*) of the Bankruptcy Code and Bankruptcy Rule 4003(a) require debtors to "list" the property claimed as exempt on the schedule of assets required to be filed. "Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*). *See also Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 1647–48, 118 L.Ed.2d 280 (1992). Bankruptcy Rule 4003(b) establishes the time limits within which a trustee or any creditor may file objections to the list of property claimed exempt. Bankruptcy Rule 4003(c) expressly places the burden of proof on the objecting party to prove the exemptions are not properly claimed. *See also In re Ritter,* 190 B.R. 323, 325 (Bankr.N.D.Ill.1995). In the matter at bar, the Trustee, as the objecting party, has the burden of proving that the exemptions are not properly claimed. The standard of required proof is presumably a preponderance of the evidence. *See* 1 T. Salerno and J. Udall, *Bankruptcy Litigation and Practice: A Practitioner's Guide* § 8.65(11) (2d ed.1995).

## B. *Illinois Uniform Fraudulent Transfer Act*

The Trustee seeks to recover the subject transfer of the Property pursuant to the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.* (the "UFTA"), which provides in pertinent part:

§ 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor. . . .

740 ILCS 160/5(a)(1). The Trustee asserts that the transfer of the Property into tenancy by the entirety was made with the actual intent to hinder, delay or defraud Shirley Gardner, a creditor of the Debtor.

■ Section 5 of the UFTA is analogous to 11 U.S.C. § 548(a)(1).[1] *See Scholes v. Lehmann,* 56 F.3d 750, 756 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995). Therefore, precedent under § 548(a)(1) is equally applicable to the Illinois version of the UFTA. *Martino v. Edison Worldwide Capital (In re Randy),* 189 B.R. 425, 443 (Bankr.N.D.Ill.1995). The UFTA allows the Trustee to recover the transfer made by the Debtor if the Debtor made the transfer with actual intent to defraud a creditor. *Id.* The UFTA speaks to two types of fraud—"fraud in fact" and "fraud in law." *Scholes,* 56 F.3d at 756–57.

■ "Fraud in fact" or actual fraud occurs when a debtor transfers property with the intent to hinder, delay or defraud his creditors. The moving party must prove a specific intent to hinder, delay or defraud. *Lindholm v. Holtz,* 221 Ill.App.3d 330, 334, 163 Ill.Dec. 706, 709, 581 N.E.2d 860, 863 (2d Dist.1991) (citing *Gendron v. Chicago & North Western Transp. Co.,* 139 Ill.2d 422, 437, 151 Ill.Dec. 545, 552–53, 564 N.E.2d 1207, 1214–15 (1990)). In determining whether a transfer is made with actual intent to defraud, the UFTA sets forth several fac-

---

1. An important difference between § 548 and UFTA is that § 548 authorizes avoidance of transfers made within one year before the bankruptcy filing. 11 U.S.C. § 548(a). Causes of action for fraudulent conveyances can be brought under the UFTA, however, within four years after the transfer was made. 740 ILCS 160/10(a). Because the transfer at issue was made more than one year before the bankruptcy filing, relief under § 548 is not available to the Trustee and he must and does rely on the UFTA, but utilized same in conjunction with his powers under 11 U.S.C. § 544(b).

tors—also known as the "badges of fraud"—from which an inference of fraudulent intent may be drawn. Section 5(b) of the UFTA sets forth the following indicia:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b). When these "badges of fraud" are present in sufficient number, it may give rise to an inference or presumption of fraud. *Steel Co. v. Morgan Marshall Indus., Inc.,* 278 Ill.App.3d 241, 251, 214 Ill. Dec. 1029, 1036, 662 N.E.2d 595, 602 (1st Dist.1996) (citation omitted).

■ "Fraud in law," on the other hand, does not require a showing of fraudulent intent. *Scholes,* 56 F.3d at 757. The distinction between "fraud in fact" and "fraud in law" cases is derived from whether or not there was any consideration for the conveyance under attack. *Second Nat'l Bank of Robinson v. Jones,* 309 Ill.App. 358, 365, 33 N.E.2d 732, 736 (4th Dist.1941). Lack of consideration for a debtor's conveyance coupled with the existence or prospect of other unpaid creditors, triggers the "fraud in law" theory in which intent to hinder, delay or defraud is presumed from the circumstances. *See Capitol Indem. Corp. v. J.H. Keller,* 717 F.2d 324, 327 (7th Cir.1983); *Tcherepnin v. Franz,* 475 F.Supp. 92, 97 (N.D.Ill.1979); *Wilkey v. Wax,* 82 Ill.App.2d 67, 70, 225 N.E.2d 813, 814 (4th Dist.1967).

## C. *Illinois Tenancy By the Entirety*

■ The Bankruptcy Code references the extent of the exemption for property held in tenancy by the entirety. One issue before the Court is whether the Debtor's interest in the Property held in tenancy by the entirety is "exempt from process" under Illinois law, so that it qualifies as exempt property under 11 U.S.C. § 522(b)(2)(B). Section 522(b)(2)(B) states that a debtor may exempt from property of the bankruptcy estate:

*any interest in property in which the debtor had,* immediately before the commencement of the case, *an interest as a tenant by the entirety* or joint tenant *to the extent that such interest as a tenant by the entirety* or joint tenant is *exempt from process* under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B) (emphasis supplied). By limiting the exemption to that property "exempt from process under applicable nonbankruptcy law," § 522(b)(2)(B) clearly intended to limit a debtor's exemption to those available under applicable local law.[2]

Accordingly, the Debtor's claim of exemption in the Property held in tenancy by the entirety arises under Illinois law and, to resolve the question, the Court must interpret that law. *In re Paeplow,* 972 F.2d 730, 737 (7th Cir.1992) (interpreting Indiana tenancy by the entirety law for exemption purposes). Applicable Illinois, nonbankruptcy law—735 ILCS 5/12–112 and 750 ILCS 65/22—which at the time of the transfer provided respectively in relevant part:

**2.** The Court has previously held that a debtor can properly claim exempt his interest in an Illinois tenancy by the entirety property. *See In re Allard,* 196 B.R. 402 (Bankr.N.D.Ill.), *aff'd, Great Southern Co. v. Allard,* 202 B.R. 938 (N.D.Ill. 1996).

*Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants.* However, any income from such property shall be subject to garnishment as provided in Part 7 of this Article XII, whether judgment has been entered against one or both of the tenants.

735 ILCS 5/12–112 (emphasis supplied) (footnote omitted).

Nothing in this Act abolishes or prevents the creation and enjoyment of the estate of tenancy by the entirety with respect to any devise, conveyance, assignment, or other transfer of property, including a beneficial interest in a land trust, maintained or intended for maintenance as a homestead by both husband and wife during coverture made or executed on or after October 1, 1990.

750 ILCS 65/22.

## D. *11 U.S.C. § 363(h)*

The Trustee seeks to sell the property under 11 U.S.C. § 363(h), which provides in pertinent part:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) ... of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-

owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, or electric energy or of natural or synthetic gas for heat, light, or power.

(i) Before the consummation of a sale of property to which subsection ... (h) of this section applies ... a co-owner of such property ... may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection ... (h) of this section applies, the trustee shall distribute to ... the co-owners of such property ... and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such ... co-owners, and of the estate.

11 U.S.C. § 363(h), (i) and (j).

Under this section the Trustee has the power to sell one-hundred percent of the Property even though the co-owner is not in bankruptcy. *See Murray v. Murray (In re Murray)*, 31 B.R. 499, 502 (Bankr.E.D.Pa. 1983). Property owned by a debtor as co-owner as a tenant by the entirety is property of the estate within the meaning of 11 U.S.C. § 541. *See Hadley v. Koehler (In re Koehler)*, 6 B.R. 203, 204 (Bankr.M.D.Fla.1980).

## E. *Choice of Law*

The Debtor makes the point that because there is a clear split of authority which presently exists between two of the Illinois Appellate Court Districts,[3] this Court should follow the law as announced by the Appellate Court for the district in which this Court sits. *See Rizzo v. Means Services, Inc.*, 632 F.Supp. 1115, 1131 (N.D.Ill.1986); *Abbott Labs. v. Granite State Ins. Co.*, 573 F.Supp. 193, 196–200 (N.D.Ill.1983). The Debtor further urges the Court to predict the Illinois Supreme Court's resolution of the issue because there are conflicting answers from two districts of Illinois' appellate court. *See Sys-*

---

3. *See E.J. McKernan Co. v. Gregory*, 268 Ill. App.3d 383, 205 Ill.Dec. 763, 643 N.E.2d 1370 (2d Dist.1994), *appeal allowed*, 161 Ill.2d 525, 208 Ill.Dec. 358, 649 N.E.2d 414 (1995), *dis-*

*missed with prejudice*, No. 78487 (May 23, 1995) and *In re Marriage of Del Giudice*, 287 Ill.App.3d 215, 222 Ill.Dec. 640, 678 N.E.2d 47 (1st Dist. 1997).

*temax, Inc. v. Schoff,* 972 F.Supp. 439, 441–42 (N.D.Ill.1997); *Applied Micro, Inc. v. SJI Fulfillment, Inc.,* 941 F.Supp. 750, 754–56 (N.D.Ill.1996). The Trustee counters that the *Systemax* approach is not uniformly applied by federal district judges when exercising their diversity jurisdiction in compliance with *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### F. *Recent Amendment to 735 ILCS 5/12–112*

Recently, § 12–112 was amended and now provides in relevant part:

All the lands, tenements, real estate, goods and chattels (except such as is by law declared to be exempt) of every person against whom any judgment has been or shall be hereafter entered in any court, for any debt, damages, costs, or other sum of money, shall be liable to be sold upon such judgment. Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, *except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due. ...*

735 ILCS 5/12–112 (emphasis supplied indicating the amended language). The amendment seemingly mandates retrospective application because part of the enacting legislation provides that: "[t]his amendatory Act of 1997 is intended as a clarification of existing law and not as a new enactment." 1997 P.A. 90–514, § 10 (effective Aug. 22, 1997).

The Debtor argues that the requisite intent proven must be the *sole* intent; that the evidence does not demonstrate sole intent; that the amendment does not refer to or expressly adopt the guidelines employed in the UFTA; that it would be unjust not to apply *McKernan,* which was the only reported case at the time of the transfer; and that the amendment should not be retrospectively applied when to do so would lead to unreasonable or unjust results. The Trustee

maintains that the recent amendment to § 12–112 is an obvious legislative effort to overrule the *McKernan* decision and further reason for this Court to follow the *Del Giudice* decision.

### IV. *DISCUSSION*

One of the threshold issues is whether the Court, as a matter of choice of law, will follow the view urged by the Trustee, as adopted by the more recent decision of the First District of the Illinois Appellate Court in *Del Giudice,* or whether the Court is obliged to follow the contrary view of the Second District of the Illinois Appellate Court in *McKernan,* as to the possibility of the avoidance of the transfer of the Property into tenancy by the entirety. The Debtor concludes that because of the clear split of authority, as of yet unresolved by the Illinois Supreme Court, the Court should decide the matter as if it were sitting as an Illinois Circuit Court, and thereby is bound by the *McKernan* decision, just as a federal district court would be so bound if these matters were before it for adjudication under that court's diversity jurisdiction. As an aside, it is not crystal clear just what the Illinois Supreme Court might do in this matter.

 The Court does not agree with the Debtor's conclusion that it is bound to apply *McKernan.* The Court is not exercising any jurisdiction based on the diversity of the parties under 28 U.S.C. § 1332, (which diversity of citizenship does not exist in any event as all parties to these disputes are Illinois residents), but rather is exercising its bankruptcy jurisdiction under 28 U.S.C. § 1334 and the automatic reference rule of the District Court, Local General Rule 2.33(A), by which all bankruptcy cases and related adversary proceedings are automatically referred to the bankruptcy judges comprising the adjunct unit of the District Court known as the Bankruptcy Court via 28 U.S.C. § 151. Thus, the Court is not obliged to decide the matters at bar as would a federal district trial court using state substantive law in a diversity case, as *Erie* requires, because the federal questions under §§ 363(h), 522 and 544(b) must be decided utilizing federal bankruptcy jurisdiction

along with the Illinois state exemption and fraudulent conveyance avoidance issues. This is not to say, however, that Illinois law will not be considered by the Court. On the contrary, the cited Illinois case law has been carefully considered in conjunction with the applicable statutes. *See Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) (the Court is directed to look to state law relative to the creation of interests in property and exemptions therein because the Bankruptcy Code itself does not answer the ultimate questions and Illinois has opted out of the Congressional exemptions per 11 U.S.C. § 522(b)(1) and 735 ILCS 5/12–1201).

Moreover, choices between state and federal law are to be made not by application of any automatic "litmus paper" criterion but rather by reference to the principles of outcome determination and the deterrence of forum shopping. *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1085 (3d Cir. 1991), *cert. denied*, 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992). Indeed, the Court has looked at the relevant Illinois statutory and decisional law to construe and apply same to determine both the meaning of the subject state statutes, *see Edward Hines Yellow Pine Trustees v. Martin*, 268 U.S. 458, 462–63, 45 S.Ct. 543, 545, 69 L.Ed. 1050 (1925), and whether there was a voidable conveyance by the Debtor and his spouse to themselves which the Trustee can set aside. *See Alcott Co. v. Raphael*, 275 F.2d 551, 552 (5th Cir.1960). Furthermore, where the decisions of the intermediate state appellate courts are in conflict, federal courts may make their own decision as to what the Supreme Court of Illinois might do. *See Preston v. Aetna Life Ins. Co.*, 174 F.2d 10, 16 (7th Cir.), *cert. denied*, 338 U.S. 829, 70 S.Ct. 80, 94 L.Ed. 504 (1949).

That said, the Court concludes that the view espoused in *Del Giudice* is the better approach, rather than the *per se* protection afforded by the *McKernan* decision. This result was earlier suggested by the Court. *See Great Southern v. Allard (In re Allard)*, 198 B.R. 715, 719–721 (Bankr. N.D.Ill.1996). The result is that some transfers into Illinois tenancy by the entirety may be avoidable, and some may not, depending on all the facts and circumstances surrounding the conveyance sought to be avoided. In addition, this view appears to comport with the recent amendment to § 12–112, which obviously was intended to carve out an exception to the limited protection otherwise afforded by that section—those transfers made with the sole intent to avoid the payment of existing debts then beyond the transferor's ability to pay as they become due.

The legislative gloss strongly indicates that the exception was intended to change the result obtained by the victorious debtor in *McKernan*. *See* State of Illinois, 90th General Assembly, Senate Transcript Debate, S. 465, March 17, 1997 at 30–33; 37 (statements of Senators Cullerton and Geo–Karis) and June 1, 1997 at 33–34 (statement of Senator Cullerton); State of Illinois, 90th General Assembly, House of Representatives Transcription Debate, May 13, 1997 at 1 (statement of Representative Meyer). Indeed the legislative gloss undermines some of the Debtor's arguments and unmitigated reliance on *McKernan*. The legislative history is particularly persuasive inasmuch as it was the Illinois General Assembly that resurrected the previously abolished Illinois tenancy by the entirety as a mode of property ownership available to Illinois married couples to protect their marital homestead from creditors of one of the spouses, albeit with the statutory limitations contained therein which do not afford eligible couples an absolute defense against the claims of creditors (or bankruptcy trustees exercising their powers under § 544) of one of the spouses.

Because the Court declines to follow the decision in *McKernan*, the more significant question is whether the Trustee has established all elements under the UFTA to sustain that cause of action in conjunction with his objection to the exemption claimed in the Property. Resolution of the claim objection and the avoidance action logically go hand in glove. If the Trustee can show actual fraud in the reconveyance of the Property into tenancy by the entirety by a preponderance of the evidence, and that the sole intent thereof was to avoid the payment of debts

existing at the time of the transfer beyond the Debtor's ability to pay those debts as they became due, then relief should be granted and the objection to the exemption should be sustained.

Initially, the Court rejects the Debtor's argument that the UFTA is inapplicable because there is no reference thereto in the tenancy by the entirety statutes. The legislative gloss to the recent amendment to § 12–112 indicates that the UFTA was considered. The above cited Illinois case law and the pertinent "badges of fraud" under the UFTA are critical to this determination of whether actual fraud attended the subject reconveyance. A number of the "badges" are present and revealed by the stipulation of the facts: (1) the transfer was to insiders— by and to the Debtor and his spouse; (2) the Debtor and his spouse retained possession and control of the Property after the transfer; (3) prior to the transfer, the Debtor had gone into default on the note to Ms. Gardner who had made demand and threatened litigation; (4) the transfer was of substantially all (the vast majority in value) of the Debtor's assets; (5) the Debtor lacked sufficient other assets to satisfy the remaining unpaid claim of Ms. Gardner; and (6) the transfer occurred after the debt to her was incurred and shortly before she filed suit to collect the unpaid balance. Thus, over half of the "badges of fraud" are present, which gives rise to the inference of fraud. There is no doubt in the Court's mind that the transfer was effectuated to attempt to insulate the Property from Ms. Gardner's claims against the Debtor. Certainly it had that effect until the Trustee investigated the matter and timely filed the objection and avoidance action at bar in an effort to recover the Debtor's undivided one-half interest in the Property for the benefit of all creditors of the estate including, but not limited to, Ms. Gardner.

The Court rejects the Debtor's argument that there was not a transfer for purposes of the UFTA. At all times, the Debtor owned an undivided one-half interest in the Property. As the *Del Giudice* court aptly pointed out, "retitling property from joint tenancy to tenancy of the entirety is still a conveyance and therefore satisfies the requirements of the Transfer Act." 287 Ill.App.3d at 219, 222 Ill.Dec. at 643, 678 N.E.2d at 50 (citation omitted).

That the Trustee wins and the Debtor and his spouse lose this battle does not serve to produce a result at odds with the central policies behind the Bankruptcy Code. On February 8, 1997, the Debtor received a discharge freeing him from all his dischargeable pre-petition debts and thereby obtained his fresh start. That principal policy goal of the Bankruptcy Code has been met. The other principal goal is to obtain maximum dividends for the creditors in the order of priority established by the Code. That is what the Trustee's efforts seek. Often, as in this case, the Debtor's economic and property interests and his understandable desire to keep his interest in the Property free from claims clashes with the creditors' competing interests in getting some dividend on their claims. The Court rejects the Debtor's argument that the avoidance of the transfer and the sustaining of the objection to his claim of exemption reaches a result at odds with either Illinois or bankruptcy law.

The more difficult question is whether the conveyance was made by the Debtor with the sole intent to avoid paying his debts as they existed and as they became due. The Debtor contends that the stipulation only shows that the transfer was made with the *primary* purpose of protecting the Property from the Debtor's creditors, not that it was the *sole* purpose. Further, the Debtor states that there is no evidence or stipulation before the Court that the protection of the Property was the sole purpose of the transfer. The Court will not engage in semantic haggling.

Based on a review of the stipulation and the exhibits, the Court can find no other purpose for the transfer than to prevent the Property from being subject to Ms. Gardner's claims against the Debtor. It is true that there is no express stipulation that the sole intent of the Debtor was to avoid the payment of debts existing at the time of the transfer. Neither is there any express admission of fraud by the Debtor. Rarely is there ever made an express admission of fraud. Bankruptcy case law is legion both in

fraudulent conveyance avoidance cases as well as fraud-based dischargeability determinations and objections to discharge, for the proposition that courts may infer the requisite fraudulent intent from circumstantial and other evidence after consideration of the evidence as a whole. *See In re Krehl,* 86 F.3d 737, 743 (7th Cir.1996) ("Because direct evidence of a debtor's intent usually will be unavailable, it may be inferred from the circumstances surrounding his objectionable conduct."); *Funeraria Porta Coeli, Inc. v. Rivera de Montes (In re Rivera de Montes),* 103 B.R. 362, 365 (Bankr.D.P.R.1989) (because debtors are unlikely to testify that their intent was fraudulent, the court may view all facts and circumstances). Thus, the Court can by analogy find, based on the limited record, that the sole intent of the Debtor in making the transfer was to avoid subjecting the Property to the claims of Ms. Gardner, whose claim the Debtor could not and did not pay as it came due.

Turning to the Trustee's request to sell the Property, the Court must examine the requisite elements in § 363(h). The Property is a single family residence occupied solely by the Debtor and his spouse as their home. As such, partition in kind is not practicable among the estate and the co-owner per § 363(h)(1). Where property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds. *Bakst v. Griffin (In re Griffin),* 123 B.R. 933, 935 (Bankr.S.D.Fla. 1991) (citing *Morris v. Ivey (In re Ivey),* 10 B.R. 230 (Bankr.N.D.Ga.1981)). Because it is stipulated that the Property is a single family residence, absent evidence to the contrary, the Trustee has met his burden of proof as to § 363(h)(1). *Griffin,* 123 B.R. at 935. Moreover, the Property is not used in production, transmission, or distribution for sale of electrical energy or of natural or synthetic gas for heat, light or power. 11 U.S.C. § 363(h)(4).

Because the Property is a single family residence, and the Debtor and his spouse occupy it as their residence, sale of the estate's undivided interest in the Property would likely realize significantly less for the estate than sale of such Property free of the interest of the co-owner. 11 U.S.C. § 363(h)(2). It is generally accepted that sale of a bankruptcy estate's undivided one-half interest will generate substantially less than sale of the entire property interest free of each owner's interest because of the chilling effect that sale of such a limited interest has on prospective purchasers of the property, especially when the co-owner could continue to live on the property as is the case here. *Armstrong v. Trout (In re Trout),* 146 B.R. 823, 829 (Bankr.D.N.D.1992). It is proper for this Court to take judicial notice of the economic reality of the foregoing under Federal Rule of Evidence 201 (applicable by reason of Federal Rule of Bankruptcy Procedure 9017) and find § 363(h)(2) to be satisfied, particularly when the Property is a single family residence occupied by the Debtor. *See Maiona v. Vassilowitch (In re Vassilowitch),* 72 B.R. 803, 807–08 (Bankr. D.Mass.1987). *Accord Griffin,* 123 B.R. at 935–36. Absent evidence to the contrary, the Trustee has met his burden of proof as to § 363(h)(2).

Payment of a significant dividend to creditors from the sale of the Property is a substantial benefit to the estate. *Vassilowitch,* 72 B.R. at 807; *Ivey,* 10 B.R. at 232–33. The docket in the bankruptcy case reveals that the order setting the 11 U.S.C. § 341 meeting of creditors instructed creditors not to file claims because the Debtor's schedules indicated the likelihood of no assets from which a dividend could be paid to creditors. Thus, it seems that, if the Trustee prevails on his exemption objection and avoidance action, the benefit to the estate and the resulting dividend to creditors would outweigh the detriment to the co-owner spouse for purposes of § 363(h)(3). After all, either the Debtor or his spouse, or both, can seek to purchase the estate's undivided one-half interest in the Property from the Trustee. On this record, however, it would not be equitable to insulate the Property from all the claims of the Debtor's creditors.

## V. CONCLUSION

For the foregoing reasons, the Court sustains the Trustee's objection to the Debtor's claimed exemption in the Property. The

transfer of the Property into tenancy by the entirety is avoided under 11 U.S.C. § 544(b) and 740 ILCS 160/5(a). The Trustee is authorized to sell the Property pursuant to 11 U.S.C. § 363(h).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.