In re C.L. WHITTOM, a/k/a Charles L. Whittom, d/b/a Cedar Valley Construction, Inc., Debtor.

C.L. WHITTOM, Plaintiff,

v.

Diane KROLL, Defendant.

Michael C. CLARK, Trustee, Plaintiff,

v.

C.L. WHITTOM, Defendant.

Bankruptcy No. 97–81334.

Adversary Nos. 97–8122, 97–8229.

United States Bankruptcy Court, C.D. Illinois.

May 4, 1998.

Scott Shipplett, Galesburg, IL, for Debtors.

Michael Clark, Peoria, IL, Trustee.

Richard Dahl, Galesburg, IL, for Diane Kroll.

Steve Davis, Galesburg, IL, for Galesburg Burlington Credit Union.

Nancy Handegan, Heaver, Handegan & Scott, Decatur, IL, for First Financial Bank.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Before the Court are several related matters involving confirmation of the Chapter 13 plan filed by the Debtor, C.L. WHITTOM, (DEBTOR), which the Court has taken under advisement at various times in order to issue a consolidated Opinion. Presently pending are an objection to confirmation filed by DIANE KROLL (KROLL), a creditor, KROLL's objection to the DEBTOR's claim of exemption in his residence based upon a prepetition transfer from joint tenancy to tenancy by the entirety; the DEBTOR's motion to avoid KROLL's lien under § 522(f) of the Bankruptcy Code (Adv. No. 97–8122); and the complaint filed by MICHAEL C. CLARK, Chapter 13 Trustee (TRUSTEE), to avoid the DEBTOR's transfer to tenancy by the entirety as a fraudulent conveyance (Adv. No 97–8229).

The facts are not disputed. In 1993, the DEBTOR was hired by KROLL to build an addition to her house. Unhappy with the DEBTOR's work, KROLL terminated the contract and sued the DEBTOR in state court. The DEBTOR moved to North Carolina in the fall of 1994, and in the state court action an order was entered on November 3, 1994, attaching his real estate, including his home. A certificate of levy was filed by the sheriff of Knox County on November 4, 1994, with the Knox County Recorder of Deeds. The DEBTOR filed a Chapter 13 petition in North Carolina on November 29, 1994, claiming his home as exempt under North Carolina law. KROLL filed a motion to change venue and the bankruptcy court in North Carolina granted the motion and transferred the case to this Court. KROLL filed an objection to the DEBTOR's claim of exemptions and objected to confirmation of the plan. The DEBTOR voluntarily dismissed the case on June 15, 1995, prior to a hearing on those matters. KROLL's state court action was reinstated and the DEBTOR's challenge to the attachment order was denied on March 26, 1996. On November 20, 1996, the

DEBTOR and his wife executed a quit claim deed to their home from himself and his wife to himself and his wife as tenants by the entirety. On March 6, 1997, the state court entered a judgment in KROLL's favor against the DEBTOR in the amount of $30,-000, plus costs, and against the DEBTOR's corporation in the amount of $4,395.00, plus costs. KROLL filed a memoranda of judgment with the Knox County Recorder of Deeds on March 11, 1997. Costs have been established in the amount of $2,470.12.

The DEBTOR filed a second Chapter 13 petition in this Court on April 4, 1997. On May 28, 1997, KROLL filed an objection to confirmation of the DEBTOR's plan asserting that the plan failed to treat her as a secured creditor and that the plan was proposed in bad faith. KROLL also filed an objection to Schedules C, D & E, as well as a separate objection to Schedules B & D. A confirmation hearing was held on June 6, 1997. At the hearing the parties agreed the issues could be decided as a matter of law.

The DEBTOR also brought an adversary proceeding (Adv. No. 97–8122) against KROLL to avoid the judicial lien. At the pre-trial hearing, the parties represented that there were no issues of fact and the matter was taken under advisement. While this matter was pending, the Chapter 13 TRUSTEE sought authorization to hire KROLL's attorney to pursue a fraudulent conveyance action. An order approving the employment was entered and the TRUSTEE brought a two count complaint against the DEBTOR (Adv. No. 97–8229) under § 548(a)(1) of the Bankruptcy Code, 11 USC § 548(a)(1), and under § 544 of the Bankruptcy Code, 11 USC § 544, and the Uniform Fraudulent Transfer Act (UFTA) (740 ILCS 160/1 et seq.) to avoid the transfer of the home into tenancy by the entirety as a fraudulent conveyance. At the pretrial on this matter, the parties agreed that the two adversary proceedings should be taken together.

Tenancy by the entirety was abolished in Illinois in 1861. It was restored in 1989 when the Illinois legislature passed a statute which creates a tenancy by the entirety as to homestead property owned by spouses. At the time the DEBTOR and his wife effected the transfer of their home into tenancy by the entirety, the Illinois statute provided:

[A]ll the lands, tenements, real estate, goods and chattels (except such as is by law declared to be exempt) of every person against whom any judgment has been or shall be hereafter entered in any court, for any debt, damages, costs, or other sum of money, shall be liable to be sold upon such judgment. Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants. However, any income from such property shall be subject to garnishment as provided in Part 7 of this Article XII, whether judgment has been entered against one or both of the tenants.

735 ILCS 5/12–112. The application of the UFTA to the entireties statute was unclear and the statute was amended, effective August 22, 1997, by adding the following phrase to the second sentence, making it read:

Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due.

1997 P.A. 90–514.

At the most recent hearing on these proceedings, the parties stated that the dispositive issue is whether this Court will follow the decision of the Second District in *E.J. McKernan Co. v. Gregory,* 268 Ill.App.3d 383, 643 N.E.2d 1370, 205 Ill.Dec. 763 (2d Dist.1994), or the decision of the First District in *Marriage of Del Giudice,* 287 Ill. App.3d 215, 678 N.E.2d 47, 222 Ill.Dec. 640 (1st Dist.1997). In *McKernan,* the defendant conveyed title to his home from joint tenancy with his wife to tenancy by the entirety after judgment had been entered against him. The defendant moved to restrain the sale of the home and the circuit court denied the

motion. On appeal, the court viewed the issue as whether the fraudulent transfer act prohibited what the statutory tenancy by the entirety appeared to sanction. The court focused upon reconciling the two statutes which it viewed as "apparently conflicting." The court acknowledged that the *only* practical reason to hold property in tenancy by the entirety is to shield it from the creditors of one spouse. Holding for the defendant, the court ruled:

> We conclude that the Transfer Act and the tenancy by the entirety statutes contain no conflicts. The Transfer Act forbids transfers made with the "actual intent" to hinder, delay, or defraud. However, intent is irrelevant in a tenancy by the entirety conveyance because it simply cannot be fraudulent to engage in conduct that is specifically and unambiguously sanctioned by statute. A plain reading of the tenancy by the entirety statutes makes it clear that no mental state is required to use the tenancy's protection. There are no limitations or qualifications on the use of the tenancy, other than that the real property be held by a married couple during coverture and that the property be the couple's "homestead." Additionally, the statute provides that only those judgments entered against a debtor on or after October 1, 1990, are subject to the exemption. The defendant has met all of the statutory requirements.

Disagreeing with *McKernan*, the court in *In re Marriage of Del Giudice*, 287 Ill. App.3d 215, 678 N.E.2d 47, 222 Ill.Dec. 640 (1st Dist.1997), held that Del Giudice's retitling of his marital home after a judgment had been taken against him and a direction to levy was filed, could be a fraudulent transfer. The court stated:

> We respectfully disagree with the *McKernan* court. We find the purpose of the Uniform Transfer Act is to invalidate otherwise sanctioned transactions made with a fraudulent intent. Courts have found that other transactions, which were otherwise lawful, violated the Transfer Act. (Citation). For example, in *Johnson v. Marshall & Huschart Machinery Co.*, 66 Ill.App.3d 766, 23 Ill.Dec. 505, 384 N.E.2d

141 (1978), this court found that transfers made for the purpose of shielding assets from creditors which are sanctioned by statute, such as the transfer of an individual's assets to a limited liability corporation, can constitute a fraudulent conveyance if the property is transferred after a judgment is rendered against the individual. (Citations).

Similarly, we find that even though the tenancy by the entirety statute permits married couples to convey marital property to that estate, such transfers may still be fraudulent. We acknowledge that the legislature found it appropriate to enable married couples to shield their marital home from the creditors of one spouse. However, there is no indication from either the plain language of the statute nor the legislative history that the legislature intended to include fraudulent conduct within the scope of the afforded protections. 765 ILCS 1005/1c (West 1994).

Judge Squires, a Bankruptcy Judge sitting in the Northern District of Illinois, recently decided a case involving facts similar to those in the present case. In *In re Gillissie*, 215 B.R. 370 (Bkrtcy.N.D.Ill.1997), the debtor and his wife transferred their home from joint tenancy into tenancy by the entirety after a demand had been made upon the debtor and suit threatened if payment was not made within ten days. After the debtor filed a Chapter 7 petition, the trustee objected to the debtor's claim of exemption and filed an adversary proceeding to avoid transfer of the homestead and to sell the property. The parties stipulated that the primary intent of the debtor in transferring the property to a tenancy by the entirety was to protect his home from creditors. Discussing the recent amendment to the entireties statute, Judge Squires said:

> [T]he amendment seemingly mandates retrospective application because part of the enacting legislation provides that: "[t]his amendatory Act of 1997 is intended as a clarification of existing law and not as a new enactment." 1997 P.A. 90–514, § 10 (effective Aug. 22, 1997).

The Debtor argues that the requisite intent proven must be the *sole* intent; that

the evidence does not demonstrate sole intent; that the amendment does not refer to or expressly adopt the guidelines employed in the UFTA; that it would be unjust not to apply *McKernan*, which was the only reported case at the time of the transfer; and that the amendment should not be retrospectively applied when to do so would lead to unreasonable or unjust results. The Trustee maintains that the recent amendment to § 12–112 is an obvious legislative effort to overrule the *McKernan* decision and further reason for this Court to follow the *Del Giudice* decision.

Judge Squires rejected the debtor's contention that the court was bound to apply *McKernan* because it was required to decide the case as if it were a federal district trial court using state substantive law in a diversity case. Citing *Preston v. Aetna Life Ins. Co.*, 174 F.2d 10, 16 (7th Cir.), *cert. denied*, 338 U.S. 829, 70 S.Ct. 80, 94 L.Ed. 504, 338 U.S. 829, 70 S.Ct. 80, 94 L.Ed. 504 (1949), Judge Squires held that when a federal district court is confronted with conflicting intermediate state appellate court decisions, it may make its own determination as to what the Supreme Court of Illinois would decide.

Rejecting the *McKernan* decision, Judge Squires concluded:

> That said, the Court concludes that the view espoused in *Del Giudice* is the better approach, rather than the *per se* protection afforded by the *McKernan* decision. This result was earlier suggested by the Court. *See Great Southern v. Allard (In re Allard)*, 198 B.R. 715, 719–721 (Bankr. N.D.Ill.1996). The result is that some transfers into Illinois tenancy by the entirety may be avoidable, and some may not, depending on all the facts and circumstances surrounding the conveyance sought to be avoided. In addition, this view appears to comport with the recent amendment to § 12–112, which obviously was intended to carve out an exception to the limited protection otherwise afforded by that section—those transfers made with the sole intent to avoid the payment of existing debts then beyond the transferor's ability to pay as they become due.

The legislative gloss strongly indicates that the exception was intended to change the result obtained by the victorious debtor in *McKernan*. *See* State of Illinois, 90th General Assembly, Senate Transcript Debate, S. 465, March 17, 1997 at 30–33; 37 (statements of Senators Cullerton and Geo–Karis) and June 1, 1997 at 33–34 (statement of Senator Cullerton); State of Illinois, 90th General Assembly, House of Representatives Transcription Debate, May 13, 1997 at 1 (statement of Representative Meyer). Indeed the legislative gloss undermines some of the Debtor's arguments and unmitigated reliance on *McKernan*. The legislative history is particularly persuasive inasmuch as it was the Illinois General Assembly that resurrected the previously abolished Illinois tenancy by the entirety as a mode of property ownership available to Illinois married couples to protect their marital homestead from creditors of one of the spouses, albeit with the statutory limitations contained therein which do not afford eligible couples an absolute defense against the claims of creditors (or bankruptcy trustees exercising their powers under § 544) of one of the spouses.

This Court agrees with Judge Squires that the correct result is the one reached by the court in *Del Giudice*. As the court in *Del Giudice* noted, the purpose of the UFTA is "to invalidate otherwise sanctioned transfers made with a fraudulent intent." *Del Giudice*, 287 Ill.App.3d 215, 218, 678 N.E.2d 47, 49, 222 Ill.Dec. 640, 642. A party may not avail itself of one law with the improper motive of circumventing another. That result occurs under federal law as well. *See In re Continental Airlines Corp.*, 43 B.R. 127 (Bkrtcy.S.D.Texas 1984) (Union may not utilize labor laws for purposes for which they were not intended in order to circumvent the bankruptcy laws).

Accordingly, not all transfers into tenancy by the entirety find a safe harbor under § 12–112. Whether a transfer by spouses into tenancy by the entirety will be subject to attack depends upon the facts and circumstances surrounding the challenged conveyance. With the amendment to the

statute in 1997, the standard of avoidability is clear. In enacting the amendment, the Illinois legislature included a declaration that the amendment was a clarification of existing law, rather than a change in the law. This Court need not decide, however, if the amendment should be given retroactive effect, because the same result will occur whether the analysis is made under the UFTA or the current statute.

■ Section 5(a) of the UFTA provides, in pertinent part:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor. . . .

740 ILCS 160/5(a). In making this determination, the UFTA sets out various factors or "badges of fraud" which may be considered. These factors are:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b). When a sufficient number of the "badges of fraud" are present, a presumption of fraud arises.

■ In this case, as in *Gillissie*, a number of the "badges" are established by the stipulation of facts. First, the transfer was to an insider; second, the DEBTOR and his spouse remained in possession and control of the property; third, the transfer took place after KROLL had filed suit; fourth, the property transferred consisted of substantially all of the DEBTOR's assets; and, fifth, the transfer left the DEBTOR insolvent. Taken together, in the absence of any evidence to rebut the presumption or otherwise justify the transfer, these factors are a classic indication of fraud. The DEBTOR has admitted that the property was transferred to tenancy by the entirety to shield it from KROLL. The TRUSTEE has established that this reconveyance by the DEBTOR and his spouse was made with actual intent to hinder or defraud KROLL and the transfer will be set aside.

■ Even under the standard contained in the current statute, that the transfer be made with the "sole intent" to avoid the payment of existing debts, the DEBTOR would not prevail. It is not likely that a debtor would ever make such a concession, for express admissions of fraudulent intent are rare indeed. *See Gillissie*. Nonetheless, fraudulent intent may be inferred from circumstantial evidence and there need not be any direct evidence. As previously noted, given the retention of possession, the lack of consideration for the transfer, the pending litigation, and the insolvency of the DEBTOR, this Court concludes that the transfer was made for no other purpose than to avoid paying the debt to KROLL.

Accordingly, the transfer by the DEBTOR and his wife is set aside and the DEBTOR is not entitled to claim the property as exempt under the entireties statute. The complaint filed by the DEBTOR to avoid KROLL's lien is denied. The objection filed by KROLL to the Chapter 13 plan is sustained and the

DEBTOR will be given an opportunity to file an amended plan.

This Opinion is to Serve as findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.